ANDREW, J.T.C.
This is a state tax case in which plaintiff challenges deficiency assessments levied against it pursuant to the Corporation Business Tax Act, N.J.S.A. 54:10A-1 et seq. Plaintiff, Superior Air Products International, Incorporated is a former New Jersey corporation which operated as a domestic international sales corporation (DISC).[1] For its 1980 and 1981 tax years *466 plaintiff deducted from its income base moneys it had distributed to its parent corporation, which its parent, in turn, had erroneously included in its income base. Upon an audit by the Division of Taxation, the Division discovered plaintiffs deduction, disallowed it, and assessed plaintiff $66,771 in corporation business tax including interest.
Plaintiff seeks to offset that deficiency assessment with the erroneous tax payments that were made by its parent company relating to the income distributed by plaintiff to its parent. Can it?
Plaintiff, Superior Air Products International, Incorporated is a former New Jersey corporation which was liquidated in 1985. Prior to its liquidation, plaintiff was a wholly-owned subsidiary of Superior Air Products Company (parent). For both years of the disputed assessment, the 1981 and 1982 tax years, both subsidiary and its parent were subject to the New Jersey Corporation Business Tax Act, N.J.S.A. 54:10A-1 et seq. (CBT).[2] On its New Jersey CBT returns for those years, plaintiff deducted $366,996 in 1981 and $814,138 in 1982 as “deemed distributions”[3] to its parent corporation. Plaintiff distributed these amounts to parent during the 1981 and 1982 tax years.
*467 On parent’s New Jersey CBT returns for its tax years ending September 30, 1980, and September 30, 1981, it included $366,-966 and $814,138, respectively, in its entire net income as dividend income. Thus, plaintiff’s parent reported $1,943,993 as its entire net income for the 1980 tax year, and $475,920 as its entire net income for the 1981 tax year. Had it deducted the “deemed distributions” during those years, parent would have shown $1,576,997 as entire net income for 1980 and a $338,218 loss in entire net income for 1981. Consequently, parent paid $28,214 in CBT more than it should have for its 1980 tax year and $36,722 more than it should have for its 1981 tax year.[4]
A field audit by the New Jersey Division of Taxation (Division) conducted in 1979 and 1980 resulted in no adjustments to either plaintiff’s or parent’s taxable income or tax liability as a result of the “deemed distributions” made by plaintiff to its parent for the years to which that audit related.
The Division performed a second audit of parent’s 1980 through 1982 CBT returns in July 1984. During this audit, the Division discovered that parent had failed to deduct the “deemed distributions” from its subsidiary in computing its entire net income, pursuant to N.J.S.A. 54:10A-4(k)(5)[5] (formerly *468 (k)(1)). Under § 4(k)(5) dividend income from a wholly-owned subsidiary is excludable from a parent corporation’s income base. The Division informed parent of its error, and further, that it could not receive a refund of tax as the two-year statute of limitations had lapsed. Parent took no legal action with regard to the Division’s 1984 field audit report.
Approximately two years thereafter, the Division audited plaintiff’s business tax returns including the tax years of 1980 and 1981. Upon this audit, the Division disallowed the “deemed distributions” which plaintiff had deducted from its income base on its CBT returns. Accordingly, due to the concomitant increase in plaintiff’s entire net income by the amount it had previously paid to parent, the Division assessed corporation business tax (CBT) in the amounts of $33,030 and $33,741 plus interest and penalty for plaintiff’s 1981 and 1982 tax years, respectively. A final determination was entered on July 10, 1986, and plaintiff filed its complaint with this court on October 7, 1986 pursuant to N.J.S.A. 54:10A-19.2.
Both plaintiff and Director agree that parent’s inclusion of “deemed distributions” for the 1980 and 1981 tax years was in error, and that parent did overpay its CBT for those years as it was entitled to exclude the “deemed distributions” in computing its entire net income. Plaintiff’s deficiency for CBT for those years amounts to $66,771 not including penalties and interest. In 1980 and 1981, when parent mistakenly included the “deemed distributions” from its subsidiary in its income base, it remitted $64,936 in CBT over the amount it would have remitted had it excluded those amounts. Plaintiff now requests that its CBT deficiency assessments be offset by its parent corporation’s erroneously paid CBT.
Plaintiff’s basic contention is that I should invoke this court’s equitable powers to permit plaintiff to recoup the tax paid by its parent. Accordingly, plaintiff’s first claim is that equitable recoupment is not only appropriate but is consistent with the legislative purpose of § 4(k)(5). Citing Intern. Flavors & Frag. v. Director, Div. of Tax, 102 N.J. 210, 507 A.2d 700 (1986), *469 plaintiff urges that § 4(k)(5) was adopted in 1968 primarily “to encourage corporations to locate in New Jersey by removing the added tax on dividend income received from a subsidiary.” Id. at 216, 507 A.2d 700.
Plaintiff also urges that the Tax Court invoke its equitable powers in order to achieve a fair result and prevent a gross injustice. This argument is based on the theory that, as its parent has already paid taxes on the amount at issue when it failed to exclude that amount from its entire net income, it would be unfair to permit the State to tax this amount to plaintiff—parent’s fully-owned subsidiary—as the tax has essentially been paid. To avoid this unfairness, plaintiff argues that I should use this court’s equitable powers to afford plaintiff the remedy it seeks as being within my discretion.
In opposition, defendant counters that the doctrine of equitable recoupment does not apply in this case. Defendant’s rationale is that equitable recoupment as developed by our federal courts, citing Rothensies v. Electric Storage Battery Co., 329 US. 296, 67 S.Ct. 271, 91 L.Ed. 296 (1946), is a limited remedy, applicable wherein a “single transaction had been subjected to two taxes on inconsistent legal theories____” Id. at 300, 67 S.Ct. at 272; emphasis supplied. Defendant argues that plaintiff's claim for equitable recoupment simply fails to meet the minimum required standard. Specifically, defendant maintains that the duality of the parties and the duality of the tax transactions bar this court from granting the remedy of equitable recoupment. Accordingly, defendant urges that plaintiff’s request be denied. Further, defendant requests that I consider that as the parent corporation was the party which failed to claim a refund prior to the running of the statute of limitations, the Division is an innocent third party and not a party from whom to claim recoupment for parent’s mistakes.
Preliminarily, it should be noted that the Tax Court has had relatively few opportunities to consider the doctrine of equitable recoupment and its applicability vel non in state tax cases. See, e.g., Pantasote, Inc. v. Taxation Div. Director, 8 *470 N.J.Tax 160 (Tax Ct.1985). As a liminal consideration, I think that, given the appropriate circumstances, this court has the authority to apply the equitable concept of recoupment in state tax cases.
There is every reason to believe that the Legislature in enacting N.J.S.A. 2A:3A-4a had equity concepts such as equitable recoupment in mind when it provided:
a. The Tax Court, in all causes within its jurisdiction, and subject to law, may grant legal and equitable relief so that all matters in controversy between the parties may be completely determined. [Emphasis supplied]
Although the doctrine was not specifically applied by the Tax Court in Pantasote, the court acknowledged that the equitable concept might be appropriate if “both taxes arose out of some feature of the same transaction.” Id. at 167 (citing Beneficial Finance Co. of Atl. City v. Swaggerty, 86 N.J. 602, 432 A.2d 512 (1981)). It is clear that the doctrine has been recognized and accepted in this State in nontax contexts. See Beneficial Finance Co. of Atl. City v. Swaggerty, supra; Gibbins v. Kosuga, 121 N.J.Super. 252, 296 A.2d 557 (Law Div.1972); Atlantic City Hospital v. Finkle, 110 N.J.Super. 435, 265 A.2d 853 (Cty.Ct.1970). More significant, however, is whether the factual circumstances in this case permit an appropriate application of the doctrine.
Recoupment is a word derived from the French word recouper, meaning to cut back. It is the “right of the defendant, in the same action, to cut down ... plaintiffs demand____” 20 Am.Jur.2d, Counterclaim, Recoupment, and Setoff, § 1 at 228 (1965). In general legal practice, recoupment is in the nature of a counterclaim raised as a defense by a defendant against whom a plaintiff has made some type of money demand. It is a practical and efficient procedure for settling all the demands of the parties in one suit. Nevertheless, any claim of recoupment must arise out of the identical transaction that provided plaintiff with a cause of action, and no affirmative *471 relief may be granted independent of plaintiffs claim.[6] Id. at 235-236; see also Beneficial Finance Co. of Atl. City v. Swaggerty, supra, 86 N.J. at 609, 432 A.2d 512 (“... recoupment may be utilized only to reduce or extinguish plaintiffs recovery.” 86 N.J. at 609, 432 A.2d 512). As an equitable concept, judges invented the doctrine of equitable recoupment in order to avoid an unusually harsh or egregious result from a strict application of a statute of limitations. Smith v. United States, 373 F.2d 419, 422 (4 Cir.1966).
The essential requisites of the doctrine of equitable recoupment can be gleaned from a series of three United States Supreme Court cases beginning with the landmark decision of Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935). In Bull, the executor of an estate paid the estate taxes in 1921 on the decedent’s share of income from a partnership. Four years later, the Commissioner of Internal Revenue imposed an income tax assessment against the estate for the same year and the same income. The taxpayer argued that the income could not be treated as both corpus and income to the estate. Although the statute of limitations barred any independent action by the executor for an estate tax refund, the Supreme Court agreed with the taxpayer that when “the government brought a new proceeding [to collect the income tax] arising out of the same transaction involved in the earlier proceeding [decedent’s share of the partnership paid to the estate]” the estate tax unjustly retained by the government could be “used by way of recoupment and credit in an action ... arising out of the same transaction.” Id., 295 U.S. at 261, 55 S.Ct. at 700, 79 L.Ed. at 1428.
*472 The Court’s rationale was based on the theory that “recoupment is in the nature of a defense arising out of some feature of the transaction upon which plaintiff’s action is grounded. Such a defense is never barred by the statute of limitations so long as the main action itself is timely.” Id. at 262, 55 S.Ct. at 700, 79 L.Ed. at 1428; emphasis supplied. Accord Atl. City Hosp. v. Finkle, supra, 110 N.J.Super. at 439, 265 A.2d 853. The Court also concluded that the equities of the situation favored use of the doctrine since the government’s “unjust retention is immoral and amounts in law to a fraud on the taxpayer’s rights.” 295 U.S. at 261, 55 S.Ct. at 700, 79 L.Ed. at 1428.
In the second case, Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265 (1937), the government asserted equitable recoupment on a time-barred claim in a suit by trustees to recover on income taxes incorrectly paid on the income of the trust. It was the beneficiary of the trust, rather than the trustees, who was liable for the tax, however, at the time of the trustees’ claim for refund the statute of limitations barred the government from directly assessing the tax against the beneficiary. Recognizing the identity of interest between the trust and the beneficiary, the Court allowed the government to offset the income tax owed by the beneficiary against the income tax already paid by the trustees for which refund was sought. To do otherwise, the Court decided, would have given the trustees a tax refund which would have inured to the benefit of the trust beneficiary, while, at the same time, the statute of limitations would have prevented the government from collecting the income tax directly from the beneficiary, thereby resulting in no tax paid on the trust income. The court concluded that the equities of the situation again favored use of the equitable recoupment doctrine in determining that “[ejquitable conceptions of justice compel the conclusion that the retention of the tax money would not result in any enrichment of the government.” Id., 301 U.S. at 537, 57 S.Ct. at 854, 81 L.Ed. at 1271.
In the third case, Rothensies v. Electric Storage Battery Co., 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296 (1946) the Supreme *473 Court displayed a reluctance to extend the application of the equitable recoupment doctrine beyond the limits set forth in Bull and Stone. The taxpayer in Rothensies wanted to recover excise taxes paid from 1919 through 1922 that were time barred by the statute of limitations and to apply them against a 1935 income tax deficiency imposed by the Collector of Internal Revenue. The Court distinguished the Bull and Stone decisions, stating that both the original claim and the defendant’s plea for recoupment required a single taxable event and the doctrine of recoupment was “never thought to allow one transaction to be offset against another, but only to permit a transaction which is made the subject of a suit by a plaintiff to be examined in all its aspects and judgment to be rendered that does justice in view of the one transaction as a whole.” Id., 329 U.S. at 299-300, 67 S.Ct. at 272, 91 L.Ed. at 299. Since there were two distinct taxable transactions separated by a long interval of time, the Court refused to grant a credit to the taxpayer on the income tax deficiency.
These decisions put forth three essential elements of equitable recoupment, namely, (1) a single transaction, (2) an identity of interest among parties, and (3) a need to balance the equities. Plaintiff alleges that all of these requirements are satisfied here. First, plaintiff submits that the amount of “deemed distributions” it transferred to parent which parent erroneously included in its entire net income—involves a single tax transaction on which plaintiff, because of its relationship with parent, has already paid CBT.
Plaintiff further notes that it is a wholly-owned subsidiary of its parent, that it was the only DISC controlled by its parent and that its parent was plaintiff’s sole source of income during the 1980 and 1981 tax years, thus creating a strong identity of interests between them. Finally, plaintiff argues forcefully that I should balance the equities in order to avoid the unfair result of taxing the same transaction twice. Due to parent’s misunderstanding of the applicable tax statute, the tax has been essentially paid and any further taxation would result in a “windfall” to the Division. Plaintiff’s arguments require a *474 review of the factors inherent in this doctrine of equitable recoupment in light of the facts of this proceeding.
I.

The Same Transaction.

Some state courts have adopted a broad definition of the criterion “single transaction,” holding that an entire year or tax period constitutes the transaction involved. See, e.g., Estate of Kasishke v. Okla. Tax Comm., 541 P.2d 848 (Okl.Sup.Ct.1975); American Motors Corp. v. Wisconsin Dep’t of Revenue, 64 Wis.2d 337, 219 N.W.2d 300 (Sup.Ct.1974); and National Cash Register Co. v. Joseph, 299 N.Y. 200, 86 N.E.2d 561 (Ct.App. 1949). As a general rule, this broad view of equitable recoupment as reflected by these decisions has been based on liberal concepts of equity and fairness in individual cases. These cases ignore the fact that equitable recoupment is not a readily flexible doctrine but is rather a fairly rigid concept and for justifiable reasons. By contrast, the federal courts, which originally formulated the doctrine of equitable recoupment in tax matters, structured a narrow view. These courts view a single transaction, “as one involving only a particular item on a tax return or a single event or transaction during the tax period [in question].” National Cash Register Co., supra at 203, 86 N.E.2d 561. This narrower view is reflected in Boyle v. U.S., 380 F.2d 973, 974-975 (3 Cir.1967). In Boyle, the court noted that absent this narrower approach to the “single transaction” requirement of equitable recoupment, “[e]very assessment of deficiency would invite a search of the taxpayer’s entire tax history for items to recoup.” Id. at 975 (quoting Rothensies, supra).
Further, as the court determined in Wilmington Trust v. U.S., 610 F.2d 703, 221 Ct.Cl. 686 (1979):
The fact that a single tax determination may affect the taxes on two transactions does not convert the two transactions into a single one. If such interdependency of separate claims is sufficient to make them arise out of the same transaction, the doctrine of equitable recoupment would be significantly extend *475 ed beyond the “limited scope” the Supreme Court accorded it in Rothensies. [at 714]
The Supreme Court in Rothensies re-emphasized the reason for adhering to a narrow and rigid view of equitable recoupment. In reversing the Circuit Court of Appeals and rejecting its finding that the doctrine of equitable recoupment “was based on concepts of fairness,” the Court stated:
It probably would be all but intolerable, at least Congress has regarded it as ill-advised, to have an income tax system under which there never would come a day of final settlement and which required both the taxpayer and the Government to stand ready forever and a day to produce vouchers, prove events, establish values and recall details of all that goes into an income tax contest. Hence a statute of limitation is an almost indispensable element of fairness as well as of practical administration of an income tax policy.
As statutes of limitation are applied in the field of taxation, the taxpayer sometimes gets advantages and at other times the Government gets them. Both hardships to the taxpayers and losses to the revenues may be pointed out. They tempt the equity-minded judge to seek for ways of relief in individual cases.
But if we should approve a doctrine of recoupment of the breadth here applied we would seriously undermine the statute of limitations in tax matters. [ 67 S.Ct. at 273, footnote omitted; emphasis supplied]
See also, Wilmington Trust Co. v. U.S., 610 F.2d 703, 715, 221 Ct.Cl. 686 (1979). The same cogent reasoning must apply here.
In the present case, plaintiff deducted $366,996 and $814,138 from its 1981 and 1982 CBT returns, respectively. Plaintiff distributed these amounts to parent, which it, in turn, included on its CBT returns for its 1980 and 1981 tax years, and paid the appropriate taxes on those amounts.
As defendant notes, the United States Supreme Court cases that permitted equitable recoupment have involved “one single payment of funds” and the issue was how that sum was to be taxed. In this case, the taxable event for plaintiff was the inclusion of earnings in its income base for the tax years in question. The taxable event for plaintiffs parent was its inclusion of dividends from its subsidiary, albeit erroneously, in parent’s income base. These are distinct occurrences, not one single event. The most that can be said is that these are related or connected transactions. These are, however, as *476 distinctly different as is income to any large corporation and distribution of a portion of that income to its noncorporate shareholders in the form of dividends. See Goode, “The Postwar Corporation Tax Structure,” New York Tax Institute (1947) at 46-58; Bittker and Eustice, op. cit., supra, § 1.03 at 1-8 to 1-12.
Further evidence of this conclusion can be found by looking to § 4(k)(5), the specific deduction for dividends received by parent corporations from their wholly-owned subsidiaries: were it not for this statutory deduction, a subsidiary and its parent would both have to pay CBT on these amounts as the law would treat them as two taxable transactions. The Legislature’s inclusion of this specific deduction indicates clearly that it views them as separate, and otherwise taxable, transactions. The failure of plaintiff’s parent to avail itself of the benefit of this statutory deduction is not for this court to correct in light of the statute of limitations. I conclude, therefore, from the circumstances of plaintiff’s case that two separate, albeit closely related, transactions occurred.
Plaintiff correctly notes that the intent of the Legislature in passing § 4(k)(5) was primarily, “to encourage corporations to locate in New Jersey by removing the added tax on dividend income received from a subsidiary.” Accordingly, it further argues that denying plaintiff’s request for equitable recoupment, “flies in the face of the legislative policy of this statute.”
I remain unpersuaded as to how granting plaintiffs request in this matter will advance the policy of fostering corporate economic relocation in New Jersey. I would be hard pressed to find—and I see nothing in the record as support—that denying a set off of taxes here would discourage other corporations from doing business in New Jersey. Indeed, granting plaintiff’s request would not only not advance the policy behind § 4(k)(5), but would be contrary to the repose policy of the relatively short statute of limitations in matters of tax refunds. As our Supreme Court stated in F.M.C. Stores Co. v. Bor. of Morris Plains, 100 N.J. 418, 495 A.2d 1313 (1985), “strict *477 adherence to statutory time limitations is essential in tax matters, borne of the exigencies of taxation and the administration of local government.” Id. at 424-425, 495 A.2d 1313. Hence, plaintiffs urging that I should use this court’s equitable powers in order to produce a “fair result” must also fail. The application of the statute of limitations in tax matters is often not “fair.” Rather, it is applied for salutary reasons of predictability and repose, and I would be undermining those legislative policies if I acted otherwise.
II.

The Identity of the Parties.

Although I need go no further, having determined that, given the facts herein, two transactions are involved, the question of the identity of the taxpayer raises a significant question worthy of discussion.
Defendant correctly notes that plaintiff and its parent are separate legal entities, and thus not the identical taxpayer as was plaintiff in Bull. Defendant is also correct in asserting that simply because a benefit to one taxpayer is also a benefit to another does not create a sufficient identity of interests. However, I find no merit in defendant’s argument that the taxpayer and plaintiff must be the “identical” party for equitable recoupment to be permitted.
In Stone, for example, the Court’s rationale for permitting the government to utilize the concept of equitable recoupment was the inherent “identity of interest” between the trustee and the beneficiary of the trust. While acknowledging that the applicable tax laws differentiated between a trustee and a beneficiary as distinct, tax-paying entities, it also determined that it would not close its eyes to the fact that, in reality, it was the beneficiary’s money that was used to originally pay the tax and it was the beneficiary’s money which the trustees asked the government to return. 301 U.S. at 535, 57 S.Ct. at 853, 81 L.Ed. at 1270. The Court put it this way:
*478 ... a court of equity takes cognizance of the identity in interest of trustee and [beneficiary]. Likewise here, the fact that the [trustees] and their beneficiary must be regarded as distinct legal entities for purposes of the assessment and collection of taxes does not deprive the court of its equity powers or alter the equitable principles which govern the type of action which [the trustees] have chosen for the assertion of their claim. [Id. at 537, 57 S.Ct. at 853-854, 81 L.Ed. at 1271]
In the context of the close relationship between a close corporation and its shareholders, Hufbauer v. U.S., 297 F.Supp. 247 (S.D.Cal.1968), is closely related to Stone. In Hufbauer the taxpayer-individual mistakenly listed income from his solely-owned corporation on a federal corporation tax return rather than on his personal federal income tax return. Because the statute of limitations barred a corporate tax refund, the taxpayer sought to offset his personal income tax liability with the prior corporate tax payment on an equitable recoupment theory. Considering the identity of interest element, the federal district court reasoned that “if the requirement of identity is satisfied where the relationship between taxpayers is that of trustee-beneficiary [as in Stone ], it is also satisfied where a corporation-stockholder relationship exists ... In each instance, the benefit to one taxpayer inures to the benefit of the other taxpayer only.” 297 F.Supp. at 251.
Relying heavily on these decisions, plaintiff now asks that I extend the concept of “single taxpayer” for purposes of equitable recoupment to situations where related taxpayers have, “interests ... [that] are not conflicting.” In particular, plaintiff urges that a parent corporation and its subsidiary be treated as “one” in this context.
Implicit in the finding of the Stone Court with regard to the identity of taxpayer were the fiduciary duties and obligations of the taxpayer—the trustees—to the party who was later assessed, the beneficiary of the testamentary trust at issue. As for Hufbauer, I cannot, however, accept the rationale of that court when it noted that, “the leading cases, Bull, Stone and Boyle, supra, all involve the same taxpayers or taxpayers related in a ‘representative’ way.” Hufbauer, 297 F.Supp. at 250; emphasis supplied. In finding the relationship *479 of a trustee and a beneficiary (as in Stone) to parallel that of a corporation and its sole shareholder, the district court, in an attempt to provide an equitable solution in an individual case, overlooked the limiting factor of the prior decisions it referred to: the fiduciary relationship of the taxpayer to plaintiff who later invoked the doctrine equitable recoupment. In all three of those cases, the relationship of the original taxpayer and that of plaintiff which eventually brought the action for equitable recoupment was that of a trustee-beneficiary or executor-beneficiary. The fiduciary relationship apparent in all three of those cases was simply not present in Hufbauer, and I respectfully question and decline to follow the holding that a corporation and a single shareholder constitute a single taxpayer. If followed, any closely-held corporation and its shareholders could be considered a single taxpayer, and if carried to its logical end, any corporation and all of its shareholders could constitute a single taxpayer. Thus, the inflexible limiting direction of the United States Supreme Court in Rothensies would mean nothing.
Unlike the taxpayers in Stone, who stood in a fiduciary relationship to those later assessed a deficiency, the relationship of plaintiff to its parent here was as a subsidiary DISC. A subsidiary of a parent corporation is recognized as a wholly distinct and separate entity. Accordingly, it is not to be “disregarded” lightly. See Lyon v. Barrett, 89 N.J. 294, 300, 445 A.2d 1153 (1982). Plaintiff, however, would have me presently disregard the corporate form for purposes of equitable recoupment of a tax while concurrently “sparing” the veil for tax benefits in other matters. I would be hard pressed to make such a finding, thereby letting plaintiff benefit from not one mistake, but two mistakes: the parent’s mistaken inclusion of the dividends as well as the subsidiary’s omission of its earnings from its net income base. Such a finding cannot be supported by the doctrine of equitable recoupment. Accordingly, I conclude that plaintiff and its parent lack the necessary fiduciary relationship to be considered a single taxpayer for purposes of equitable recoupment.
*480 In light of these considerations it is unnecessary to “balance the equities” in order to determine if concepts of fairness and justice strongly favor plaintiffs claim for recoupment.
I find that plaintiff is not entitled to offset its deficiency assessment with the erroneous corporation business tax payments made by its parent corporation. The Clerk of the Tax Court is directed to enter judgment affirming the Director’s determination.

A DISC, electing to be treated as such for federal tax purposes, is not subject to federal income tax; instead, “[i]n effect, taxation is deferred for approximately one-half the export earnings of a DISC, the other half being subject to current taxation, as constructive dividends, at the shareholder level.” Bittker and Eustice, Federal Income Taxation of Corporations and Shareholders (1979), § 17.14 at 17-43 to 17-44. The DISC provisions resemble the subchapter S rules which eliminate tax at the corporate level and require reporting of corporate income by its shareholders. Id. at 17-44.
Unlike the federal system, New Jersey and several other states tax DISCS directly as subsidiaries. N.J.S.A. 54:10A-4(k)(5). Other states, such as New *466 York, treat income from DISCS as taxable to the parent company. See Chart, State Taxation of DISCS, Domestic International Sales Corporation, (P-H All States Guide) § 222-A. Apparently, plaintiff treated its income as would be proper in New York State, taxable to the parent corporation. In New Jersey, the DISC (plaintiff) should have included the dividends paid to its parent in its income base while its parent should have deducted that amount from its income base.

Because of the fact that subsidiary and parent had different fiscal years, each reported the sums involved here on different years' tax returns. Subsidiary’s fiscal years for the assessment period at issue ended on January 31, 1981 and January 31, 1982. Accordingly, it deducted the sums it transferred to its parent in its 1981 and 1982 CBT returns. Parent’s fiscal years for the assessment period at issue ended on September 30, 1980 and September 30, 1981. Thus, parent included the sums it received from subsidiary in its 1980 and 1981 CBT returns.

"Deemed distributions” are what plaintiff labelled the dividends which it distributed to its parent and then excluded on its CBT returns for the 1981 and 1982 tax years.

Defendant does not dispute the amounts which plaintiff claims were overpaid by its parent.

N.J.S.A. 54:10A—4(k)(5) asserts that a parent corporation’s:
[e]ntire net income shall exclude 100% of dividends which were included in computing such taxable income for federal tax purposes paid to the taxpayer by one or more subsidiaries owned by the taxpayer to the extent of the 80% or more ownership of investment described in subsection (d) of this section.
In N.J.S.A. 54:10A-4(d), the 80% rule is described as follows: ownership (1) of at least 80% of the total combined voting power of all classes of stock of the subsidiary entitled to vote and (2) of at least 80% of the total number of shares of all other classes of stock except nonvoting stock which is limited and preferred as to dividends.
Parent satisfied these criteria in regard to plaintiff.

In the area of state taxation, the normal process of protesting a tax deficiency assessment requires the taxpayer to shoulder the burden of proof and demonstrate why the tax payment should not be made. Thus, as in the present case, plaintiff must present a claim that is in the nature of a defense to the imposition of the tax. Although the role of plaintiff and defendant in tax litigation is reversed, this does not limit the legal or equitable claims that may be pleaded on behalf of plaintiffs in opposing tax assessments. See Bull v. United States, 295 U.S. 247, 262, 55 S.Ct. 695, 700, 79 L.Ed. 1421, 1428 (1935).